# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**JOSEPH SHIRAEF**      *
300 Durand Drive, Apt 24
Lookout Mountain, GA 30750      *

    **Plaintiff,**      *

**vs.**      *   CIVIL NO: 22-cv-02638-GPG-SBP

**AMERISTAR CASINO BLACK HAWK, LLC**
D/B/A/ Ameristar Black Hawk Casino
111 Richman Street      *
Black Hawk, CO 80422
     *

and

     *

**JOSEPH NGUYEN**
**In his Individual Capacity**      *
17301 West Colfax Avenue, Suite 135
Golden, CO 80401      *

and      *

**OFFICER STEPHANIE WHITMAN**      *
**In her Individual Capacity**
221 Church St      *
Black Hawk, CO 80422
     *

and

     *

**BRIAN DONIS**
111 Richman Street      *
Black Hawk, CO 80422
     *

and

     *

**ROB MARTINEZ**
111 Richman Street      *
Black Hawk, CO 80422

| | |
|---|---|
| and | * |
| **DYLAN JACKSON**<br>111 Richman Street<br>Black Hawk, CO 80422 | *<br><br>* |
| and | * |
| **AJ HARDMAN**<br>111 Richman Street<br>Black Hawk, CO 80422 | *<br><br>* |
| **Defendants.** | * |

\*     \*     \*     \*     \*     \*     \*          \*     \*     \*     \*     \*

## CONSOLIDATED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Joseph Shiraef (hereinafter, "Shiraef") by and through undersigned counsel Harris S. Ammerman, hereby sues Defendants Ameristar Casino Black Hawk, LLC, d/b/a Ameristar Black Hawk Casino, (hereinafter "Ameristar"), Joseph Nguyen (hereinafter "Nguyen"), Officer Stephanie Whitman (hereinafter "Whitman"), Brian Donis Security Assistant Manager for Ameristar Casino Black Hawk, LLC (hereinafter "Donis"), Rob Martinez, Security Officer for Ameristar Casino Black Hawk, LLC (hereinafter "Martinez"), Dylan Jackson, Shift Manager for Ameristar Casino Black Hawk, LLC (hereinafter "Shift Supervisor" or "Jackson"), and AJ Hardman Surveillance Supervisor for Ameristar Casino Black Hawk, LLC (hereinafter "Surveillance Supervisor" or "Hardman").

# INTRODUCTION

The facts are straightforward. Ameristar casino observed Shiraef playing blackjack for hours and confirmed that Shiraef was counting cards. The casino wanted to obtain Shiraef's identification for the purpose of placing him in casino databases as an advantage player. Knowing that card counting is legal, the casino deliberately fabricated the false pretext that they wanted Shiraef identification to confirm he was of legal age to play. Just as in *Grosch*[1] however, the casino was never actually concerned with determining Shiraef's age. The casino shift manager requested to "obtain" Shiraef's identification, Shiraef declined to hand over his ID pursuant to his right to anonymity.[2]

When Ameristar failed to obtain Shiraef's identification from him on false pretenses of age verification, Ameristar decided to summon Division of Gaming and Black Hawk Police to obtain Shiraef's identification for them. Just as the casino in *Grosch*, Ameristar decided to enlist law enforcement to obtain Shiraef's identification

---

[1] *Grosch* is essentially on point with what occurred in this case. In *Grosch*, a casino sought identification from the Grosch under the pretext that they were concerned whether Grosch was under 21. They summoned police to detain Grosch and obtain his identification under this false pretext. See *Grosch v. Tunica Cty.*, No. 2:06CV204-P-A, 2008 U.S. Dist. LEXIS 2079, at *17 (N.D. Miss. Jan. 8, 2008).

[2] Under the law, there is no requirement to carry identification, the failure to produce identification to a private individual or police officer cannot be a crime. See *Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt Cty.*, 542 U.S. 177, 187 (2004) (In *Hiibel*, the Supreme Court created a circumstance where an individual's obligation to the police could reach an obligation to "disclose his name," but the opinion fell short of requiring identification documents as the casino and Division of Gaming agent were demanding in the present case. And as discussed below, even that justification did not exist in this case.)

based on the knowingly false pretext of age-verification and for the casino's true private purpose of blacklisting Shiraef and placing his information in casino databases as an advantage player.

Ultimately, Ameristar unwittingly divulged the true purpose of its seeking Shiraef's identification to Colorado Division of Gaming agent Nguyen. Instead of telling Nguyen the false pretext that the casino wanted to verify Shiraef's age, Ameristar's Surveillance Supervisor AJ Hardman told Nguyen the truth that the Casino had determined Shiraef was counting cards at blackjack and accordingly wanted to expunge his identity as an advantage player.[3]

Hardman used video surveillance feed to direct Joseph Nguyen on exactly where Shiraef was and which car he was driving as he left to catch his flight and using this information, Nguyen swerved in front of Shiraef with his SUV, boxing him in.

The quagmire of a detention of Shiraef that was instigated by Ameristar casino by Colorado Division of Gaming and Black Hawk Police Officers was aptly described by an investigative journalist with Fox31 Denver in a recent primetime broadcast "how

---

[3] And this anonymity is very valuable to the Plaintiff in light of his legal activities. In order to avoid being placed in a database or being found in a database used by casinos to prevent intelligent and savvy gamblers from frequenting their public establishments, advantage gamblers play under aliases or simply refuse to provide identification when it is not legally required. See e.g. *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1135 (9th Cir. 2012). In short, advantage gamblers go to great lengths to protect their anonymity and identity, as is their right. See "Legal Questions Raised by the Widespread Aggregation of Personal Data," Adam Tanner, 49 New Eng. L. Rev. 601, 602 (New England School of Law, 2015) ("Patrons can gamble anonymously if they prefer, but most share personal information by signing up for loyalty cards.").

bad is it that two different law enforcement agencies—cops from two different agencies didn't seem to know Colorado law?"[4]

Ultimately Nguyen admits on video[5] that the legal <u>activity of card counting</u> was the sole basis for his decision to detain Shiraef for cheating and criminal offense of fraudulent activity.[6] As Black Hawk City Police Officers Stephanie Whitman arrives, Nguyen immediately approaches her and admits on video that Shiraef's status as "a reported card counter" is the basis for his detention.[7] Despite Nguyen making clear that he was detaining Shiraef for a legal activity, instead of Whitman acting to end Nguyen's false imprisonment of Shiraef, Whitman instead assists Nguyen and collaborates in Shiraef's false imprisonment. Unperturbed by the idea of Shiraef being deprived of his liberty based on legal activity, Officer Whitman stated that it was up to Nguyen if and when Shiraef was going to be released.

## PARTIES

1. The Plaintiff, Joseph Shiraef, is an adult citizen resident of Lookout Mountain, Georgia and has sufficient contacts to warrant personal jurisdiction in this state and

---

[4] See <https://www.youtube.com/watch?v=yv-FJHHjNWU> at 1:45-1:51.

[5] The video of the last 2 minutes of this encounter which contains Nguyen's statements is available at: <https://vimeo.com/637646048> (hereinafter "online audio/video"). Plaintiff incorporates by reference this video in its entirety for his complaint.

[6] "…card counting does not involve dishonesty or cheating. On the contrary, a card counter is simply a highly skilled player who analyzes the statistical probabilities associated with blackjack and based upon those probabilities, develops playing strategies which may afford him an advantage over the casino." *Bartolo v. Boardwalk Regency Hotel Casino, Inc.*, 449 A.2d 1339, 1342, 185 N.J.Super. 534, 538 (N.J.Super.L.,1982).

[7] See :45, of Whitman's Bodycam-Footage ("Bodycam Audio/Video") <https://youtu.be/ULCJYnu68Ns>

this federal Court.

2. Ameristar Casino Black Hawk, LLC ("Ameristar") is incorporated and domiciled in the State of Colorado.

3. Joseph Nguyen is employed by the State of Colorado as an agent with the Colorado Division of Gaming and has sufficient contacts to warrant personal jurisdiction in this state and this federal court.

4. Nguyen is sued in his individual capacity.

5. Stephanie Whitman is employed by the City of Black Hawk and has sufficient contacts to warrant personal jurisdiction in this state and this federal court.

6. Whitman is sued in her individual capacity as a police officer for the City of Black Hawk.

7. At all times pertinent to this complaint Whitman and Nguyen were acting under color of Colorado Law.

8. Brian Donis is employed by Ameristar Casino Black Hawk, LLC ("Ameristar") as a Security Assistant Manager

9. Rob Martinez is a Security Officer employed by Black Hawk Ameristar casino.

10. Jackson is Rob Martinez is employed by Ameristar Casino Black Hawk, LLC as a Security Officer

11. AJ Hardman is employed by Ameristar Casino Black Hawk, LLC as a Surveillance Supervisor.

12. At all times pertinent to this complaint the aforementioned casino employees

were acting within the course and scope of their employment with Ameristar Black Hawk, LLC d/b/a Ameristar Black Hawk Casino located at 111 Richman Street Black Hawk, CO 80422.

13. Defendants' actions were objectively unreasonable and undertaken with actual malice, evil intent, willfulness, a reckless disregard for Shiraef's federally protected rights, and deliberate intent to cause Shiraef harm arbitrarily such that Defendants' actions shock the conscience.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, 1332, and 1343, 42 U.S.C. § 1983, and 18 U.S.C. § 1964, and the supplemental jurisdiction of this Court to hear claims arising under state law is invoked pursuant to 28 U.S.C. §1367.

15. This Court has general jurisdiction over Defendants because they are all domiciled in Colorado, and the has sufficient contacts to warrant personal jurisdiction over all Defendants.

16. Venue is proper in this district, as the events complained of occurred in Black Hawk Colorado, which falls within the jurisdiction of this Court. Further, all records, potential witnesses, reports, etc., related to the complained-of events are likely to be located in Colorado.

## FACTS COMMON TO ALL COUNTS

17.  On the night of October 19, 2021, Joseph Shiraef had a long layover at Denver airport, so he decided to visit Black Hawk for the evening.

18.  Shiraef went to Ameristar casino and played blackjack for a few hours[8] and was down $4,000.

19.  Because of the consistent bet-spread (wagering deviation) in Shiraef's blackjack play, Hardman alerted Shift Manager Dylan Jackson that Shiraef was suspected of counting cards. Jackson instructed Hardman to continue to monitor Shiraef to confirm that he was counting cards.

20. Video surveillance footage ("Surveillance Video")[9] begins with Ameristar casino surveillance zoomed up close on Shiraef's face. By this point Ameristar personnel had already surveilled Shiraef and observed that Shiraef increased his bet/wager amount dramatically when the count[10] became favorable. Ameristar also

---

[8] Shiraef blackjack session last through the night and into the early morning of October 20, 2021.

[9] Available at: <https://www.youtube.com/watch?v=ggM_YjVw2dI> Shiraef incorporates by reference the entirety of this video as video for his complaint.

[10] "…the card counting process… contain[es] three basic elements: The first is the method for keeping track of, or 'counting,' the cards that have been dealt. This is usually accomplished by assigning a certain plus or minus value to each card in the deck and keeping a 'running total or count' of these values as the cards are being dealt. The 'running count' is then converted into a 'true count' which depends upon the number of cards left to be dealt. The second element of these systems is the strategy to be followed for hitting, standing, doubling down, splitting pairs or surrendering. This strategy is a variable one which depends on the specific cards held by the player, the exposed card of the dealer, and the plus or minus value of the count at that particular time. The third component of these systems is the ability to vary the amount of each wager so that

observed Shiraef's playing decisions over the span of hours of playing and determined that Shiraef consistently employed deviations from basic strategy based on the true count.

21. After hours of observing Shiraef play blackjack, Hardman had assessed Shiraef's play long enough and confirmed that Shiraef was in fact counting cards.

22. Jackson requests that Hardman see if he could identify Shiraef based on his facial appearance. Hardman zooms in on Shiraef's face, performs a biometric scan, and compares his face against the casino's databases but could not identify who Shiraef was.

23. Jackson confers with Hardman, Brian Donis, and Rob Martinez, and these four employees agree to the common plan that they would employ the false pretext of age-verification to obtain Shiraef's identification, so that they could put Shiraef's identification in the Ameristar casino database as an advantage player. They also agreed that if Shiraef did not voluntarily provide identification, they would enlist law enforcement to detain Shiraef and coerce a surrender of his identification based on the false pretense of age-verification.

24. Jackson proceeds to approach Shiraef[11] and asks him to step away from the

---

minimal amounts are bet when the 'count' is unfavorable and larger amounts when the 'count' is favorable.*" Bartolo v. Boardwalk Regency Hotel Casino, Inc.*, 449 A.2d 1339, 1341–42, 185 N.J.Super. 534, 538 (N.J.Super.L.,1982).

[11] Surveillance footage at :12.

table.[12] The shift supervisor gestures with his hands twice that he needs an identification card as he requests Shiraef to hand his ID over.[13]

25. Shiraef had already shown his ID multiple times at the entrance, at the table games and had even been given a wristband which demonstrated that casino staff had confirmed he was above the age of 21.

26. Shiraef nevertheless shows the shift manager both his chips and his wrist band that confirms he is 21 years of age or older. The shift manager points at the wrist band and shakes his head that it's not enough for the casino.[14] The shift manager tells Shiraef that he needed to "obtain" Shiraef's ID so that the employee could "check something."

27. Shiraef declines, pursuant to his right to anonymity.

28. Jackson tells Shiraef that he would not be allowed to cash out his chips, which were worth $1,800.

29. Shiraef informed the shift supervisor that the casino was legally required to pay him out, and that he had a flight to catch soon.

30. Jackson replies, "well you're definitely not cashing out those chips unless you hand me that ID, I need to check something."

31. Shiraef informs Jackson that he was going to be calling the Colorado gaming

---

[12] It should also be noted that it is common practice for Casinos to ask advantage players to step away from the table. This is to ensure that leisure gamblers cannot be privy to their conversations with advantage players in knowing blackjack is a skill game.
[13] Id. at :22-:26.
[14] Id. at :29.

commission.

32. The shift supervisor replies, "you're free to call Colorado gaming, go ahead."

33. Shiraef waits a few minutes while the shift manager speaks with other security personnel on his earpiece, and it was not clear if they were going to reach a gaming agent anytime soon.

34. Shiraef's flight would be departing soon and did not have enough time to wait around indefinitely, so he decides to leave, intending to resolve the matter regarding the refusal to cash his chips later.

35. Jackson[15] proceeds to closely follow Shiraef as he calmly walks away from the casino floor. The casino supervisor continually updates surveillance[16] as well as Donis and Martinez over his radio so they can coordinate to effect a seizure of Shiraef's ID through enlistment of law enforcement officers.

36. Hardman contacts the Division of Gaming and informs them the casino wants Shiraef's identification. Hardman proceeds to track Shiraef using the casino's surveillance cameras so that he can relay Shiraef's location to Division of Gaming Agent Joseph Nguyen, who is en route, in real-time.

---

[15] Id. at 1:12.
[16] 1:26-1:33

37. Hardman communicates directly with Joseph Nguyen and informs him that Shiraef was counting cards at blackjack.[17] Hardman further explains to Nguyen that they could not ascertain who Shiraef was based on their database, and requested that Nguyen detain Shiraef, secure Shiraef's identification, and relay Shiraef's identification information to casino personnel.

38. Jackson continues following closely next to Shiraef, following right behind Shiraef as he was getting on the escalator to leave.[18] The casino shift supervisor then continues following Shiraef through the atrium,[19] clearly set on getting Shiraef's identification, stalking him, and harassing him.

39. Jackson even follows Shiraef as he's getting onto the elevator, again continually updating other casino personnel as surveillance closely follows Shiraef's movements for the purpose of enlisting law enforcement to coerce Shiraef into surrendering his anonymity.

40. Hardman follows Shiraef for over 7 minutes using surveillance cameras as Shiraef exists on different floors looking for his vehicle.[20] Finally Shiraef locates his car, accordingly, Hardman notifies Officer Nguyen of Shiraef's location on the fifth floor of the casino garage, and also relays to Nguyen a description of Shiraef's vehicle.

---

[17] At no time did Ameristar Casino or its employees ever state to law enforcement that Shiraef was engaged in or suspected of cheating or committing the criminal offense of fraudulent activity, nor any activity that would constitute the same.
[18] Id. at 1:49-2:15.
[19] Id. at 2:15-2:40.
[20] Id. at 3:15-10:30.

41. Using the information provided by Hardman, Nguyen drives the wrong way down a one-way garage turn lane so that the front of his black SUV is facing directly and the front of Shiraef's car.[21]

42. Nguyen proceeds to accelerate forward with his emergency lights activated and sirens blaring, and forces Shiraef backward, and Nguyen boxes in Shiraef's car.[22]

43. Hardman seizes on the opportunity to zoom in on the license plate of Shiraef's vehicle[23] so that Ameristar could perform a license plate search later to ensure the casino could ascertain Shiraef's identity as an advantage player.

44. Nguyen proceeds to park his SUV in front of Shiraef blocking his exit, and physically blocks Shiraef's car so it was not possible for him to move forward anymore.[24]

45. Nguyen stepped out of his car as Nguyen, steps out of his SUV he clutches his microphone, and tells Hardman that he successfully prevented Shiraef from leaving the casino premises and was detaining him.[25]

46. Meanwhile Jackson, Donis, and Martinez have informed Hardman that they are en route to the site of Nguyen's detention of Shiraef to ensure that the casino is able to obtain Shiraef's identification from Nguyen, after Nguyen coerces Shiraef to provide it and surrender his anonymity.

---

[21] Id. at 11:39.
[22] Id. at 11:40-12:36.
[23] Id. at 12:22-12:25.
[24] Id.
[25] Id. at 12:35-12:41.

47. After approaching Shiraef's window, Nguyen identifies himself as Colorado Gaming Commission agent, while wearing a badge and a label on his jacket that says "police."[26]

48. Nguyen identifies himself as a Colorado Gaming Commission agent and tells Shiraef he needs to see his ID. [27]

49. Shiraef shows his ID the agent as requested.

50. Nguyen asks Shiraef where he was going and Shiraef responds that he was going to the airport.

51. The agent then asks Shiraef to hand over his passport or driver's license.

52. Shiraef asked the agent if he was local law enforcement and the agent replied, "we can get Black Hawk PD over here if we need to."

53. Shiraef said that would be a relief if he could talk to an actual police officer at this point.

54. Shiraef decided to call 911 and requested police assistance because he was being detained against his will by the Gaming Commission agent when he had not done anything wrong or illegal.

55. Ultimately however, based on the CAD report, Shiraef's call to 911 was disconnected and it was Ameristar that summoned Black Hawk Police to detain Shiraef and obtain his identification.

---

[26] Id. at 12:50.
[27] Id. at 12:50-13:27.

56. Ameristar also contacted GCSO, the Gilpin County Sherriff's Office seeking to have Shiraef detained to ascertain his identity according to the CAD report.

57. Meanwhile first of the three individually named casino personnel defendants to arrive on the scene is Martinez.[28]

58. As Jackson arrives at the scene, Nguyen points to the supervisor[29] then gestures for the supervisor to approach and points at Shiraef.[30]

59. Hardman then speaks with Nguyen in person and emphasizes that the casino wants Shiraef's identification, Nguyen states that he understands[31] and turns to await the arrival of Black Hawk Police who are pulling into the scene.[32]

60. As Officer Stephanie Whitman approaches the scene of Shiraef's detention, Nguyen walks over to Whitman and admits "so, **he's a reported card counter** refusing to provide any form of ID. He says 'your not a real cop' I need some form of ID. All I need is just his Driver's License." [33]

61. At no time did Nguyen state of Whitman that Shiraef was engaged in or suspected of engaging in any illegal activity. Nor did Nguyen ever suggest that there was any concern with Shiraef being of legal age to gamble, because although Defendants intended to share that false pretext with the Division of Gaming, Nguyen

---

[28] Id. at 13:27.
[29] Id. at 18:12.
[30] Id. at 18:13:-18:19.
[31] Id. at 18:19-18:22.
[32] Id. at 18:28.
[33] Bodycam Audio/Video at :44-1:00.

ended up only with the truth that the casino wanted Shiraef's ID solely because he was a card counter.

62. Whitman approaches Shiraef asks Shiraef what was going on, Shiraef knowing that the activity of card counting of which Nguyen accused him is legal, responds that Nguyen "said I committed a crime of card counting is that a crime?"[34]

63. Whitman then conveys that she does not care whether or not Shiraef did anything wrong or illegal to justify being detained and that she was unconditionally deferring to Nguyen's decision to detain no matter how unconstitutional, baseless, and even criminal Nguyen's actions are.

64. Whitman responds "of card counting? I don't know what you did. He's department of gaming he actually has more authority then even me as the City of Blackhawk. So if he's asking for your ID its because he's conducting an investigation, and by law your mandated to provide that."[35]

65. Officer Whitman asks Shiraef to provide his ID to Nguyen.

66. However, instead of obtaining Shiraef's identification for any legitimate law enforcement purpose, Officer Whitman tells Shiraef to give Nguyen his ID and point to Nguyen[36]

67. Nguyen sticks his hand out towards Shiraef waiting to be handed the ID,[37]

---

[34] Id. 1:00-1:07.
[35] Id. at 1:05-1:20
[36] Surveillance Video at 19:59.
[37] Id. at 19:59-20:01.

Whitman insists, and again gestures towards Nguyen[38] demanding that Shiraef surrenders his anonymity to Ameristar.

68. Shiraef explains that he was simply trying to leave the casino and had a flight to cash and didn't know what Nguyen was talking about. Whitman insists that Shiraef will be detained until he surrenders his anonymity and states "well he [Nguyen] can explain it, ok give [Nguyen] your ID and it won't tie you up as much. Ok?"[39]

69. Ultimately, Shiraef succumbs to both Nguyen and Whitman's abuse of their official authority, to coerce Shiraef to surrender his ID. Shiraef proceeds to hand over his identification to Nguyen as a result of the unlawful coercion by these rogue law enforcement officer.

70. Shiraef voices his concern that Nguyen would share his private information with the casino which would identify him as an advantage player stating "I just don't want him to steal my ID…"[40]

71. Immediately, Martinez sends a text message to Hardman to share the news that Nguyen and Black Hawk Police had successfully coerced Shiraef to surrender his anonymity for the casino's private purpose.[41]

72. Shiraef's false imprisonment does not end there.

---

[38] Id. at 20:02-20:03.
[39] Bodycam Audio/Video at 1:22-1:30.
[40] Id. at 1:30-1:34.
[41] Surveillance Video at 20:10.

73. As Nguyen leaves to take Shiraef's ID to his SUV[42] Shiraef again states to Officer Whitman that there was no lawful basis to his detention. Whitman who is clearly deliberately indifferent to Shiraef's federally protected rights states again that it is up to Nguyen when Shiraef may be permitted to leave. Whitman again refuses to second guess Nguyen's detention of Shiraef no matter how obvious it is that Shiraef is being falsely imprisoned.[43]

74. Whitman discusses Nguyen's courses and training and states that "he has even more authority than I do."[44]

75. Shiraef asks "if he's going to threaten to take me to jail doesn't he need a reason to do that?[45]

76. Whitman responds "yeah he would explain that to you. Not every crime is in jail either"[46]

77. Shiraef clarifies that "I mean he didn't even have a reason he just said, 'I can take you to jail sir' and I was like 'what am I doing?'"[47]

78. Whitman then states "well if you refused to provide identification while he's conducting an investigation then you can [go to jail]."[48]

79. Thus at this juncture in the stop, Whitman lies to Shiraef that it is a crime in

[42] Id. at 20:08.
[43] Id. at 20:14.
[44] Bodycam Audio/Video 2:22-2:49.
[45] Id. at 2:50-2:59.
[46] Id. 3:00-3:04.
[47] Id. 3:04-3:11.
[48] Id. 3:11-3:17.

itself to refuse to provide ID in an attempt to justify Shiraef's false imprisonment.

80. Martinez approaches Shiraef's car and Nguyen then proceeds to hand Shiraef's identification over to Martinez to fulfill the casino's private purpose of identifying Shiraef as an advantage player.[49]

81. Donis then proceeds to approach Nguyen's SUV[50] as well, eager to view Shiraef's ID which the casino can now enter into databases including Biometrica, Oregon Surveillance Network, and Griffin Investigations, blacklisting Shiraef as an advantage player.

82. Shiraef again explains that Nguyen's stated basis for initiating the detention of suspicion of card counting is not a lawful basis to detain Shiraef because card counting is legal.

83. Whitman responds that it does not matter that Shiraef is accused of activity that is legal, because she was unequivocally supporting Nguyen's detention of Shiraef regardless of whether any objective lawful basis existed for the detention.

84. After Martinez finishes taking multiple photographs of Shiraef's ID using his smartphone, Martinez hands the ID back to Nguyen.[51]

85. Martinez then shows Donis the images he just captured of Shiraef's ID using his smartphone.[52]

---

[49] Surveillance Video at 21:35.
[50] Id. at 21:45.
[51] Id. at 21:53.
[52] Id. 21:46.

86. Donis leans up close to the smartphone screen[53] to confirm that he is able to clearly make out Shiraef's face on the ID, as well as Shiraef's other personal information including his full name, address, and date of birth.

87. Donis and Martinez then walks over to Jackson to show him the photographs of Shiraef's ID while Whitman observes the casino personnel sharing and disseminating Shiraef's information.[54]

88. Martinez pulls up the images of Shiraef's ID on his smartphone and shows them to Jackson who leans close to the screen[55] and scrutinizes the images to ensure the image quality is adequate to upload to casino databases.

89. Jackson confirms that the image quality is adequate and tells Martinez to send the images to Hardman.[56]

90. Shiraef's detention continues for several more minutes as Officer Whitman continues to personally assist Nguyen in false imprisoning Shiraef.

91. Within minutes, Hardman uploads the images of Shiraef's ID to Ameristar's casino database identifying Shiraef as a blackjack advantage player.

92. Shiraef states again that his detention is unlawful, as he was being suspected of engaging in a lawful activity. Shiraef like other skilled blackjack players was aware of the legal landscape which fully supports his pleading that Ameristar's goal was to

---

[53] Id. at 22:00.
[54] Id. at 22:42.
[55] Id. at 22:48.
[56] Id. at 22:05.

force Plaintiff to surrender his anonymity to the casino.[57] This is patently not reasonable articulable suspicion of criminal activity and a detention under such a goal taken with state action would undoubtedly be unconstitutional. See *Terry v. Ohio*, 392 U.S. 1, 4, 88 S. Ct. 1868, 1871 (1968).

93. Shiraef explains the law to Whitman and delineates clearly how his detention premised on a legal activity was patently unlawful.[58]

94. Whitman responds that she does not care about determining the legality of Shiraef detention, she reaffirms that she defers her judgment completely to Nguyen. Again, the continued interaction between Shiraef and Whitman made clear that Whitman was knowingly assisting with a false imprisonment and that Whitman does not care whether there is exists reasonable suspicion for an investigative detention.

95. When Shiraef again insists in front of Officers Whitman that card counting is not illegal nor unethical either, Whitman merely shrugs with complete indifference

---

[57] It is unfortunately a common practice of casinos to instigate the detention of a card counter using law enforcement to force the card counter to surrender their anonymity as advantage player. These cases typically resolve either with summary judgment in favor of the card counter liability or a jury verdict in the card counter's favor. See *Mills v. PPE Casino Resorts Md., LLC,* Civil Action No. RDB-15-495, 2017 U.S. Dist. LEXIS 105977, at *13 (D. Md. July 10, 2017) (entry of summary judgment in favor of card counter on a claim of false imprisonment against a casino using police to coerce identification from a card counter as occurred here to Shiraef) and *Grosch v. Tunica Cty.*, No. 2:06CV204-P-A, 2009 U.S. Dist. LEXIS 4966, at *1 (N.D. Miss. Jan. 22, 2009) ($700,000+ judgment for card counter based on a casino enlisting police to detain a patron and compel their identification as occurred to here to Shiraef).

[58] Surveillance Video, 22:46-23:23.

and fails to intervene to end Nguyen's criminal false imprisonment of Shiraef.[59]

96. Several more minutes pass with Jackson, Donis, and Martinez still surrounding Shiraef's car, Nguyen returns to the car and continues threatening Shiraef that he could go to jail for counting cards at blackjack.[60]

97. Shiraef finally begins video recording[61] with his iPhone.[62]

98. Nguyen then returned Shiraef's ID and stated, "you are being released by the Division of Gaming today for the possibility of fraud acts."[63]

99. Nguyen continued "I'ma go review the videos if the video shows that you are committing a crime by cheating or counting cards you will have a warrant for your arrest. In the state of Colorado that's not allowed."[64]

100. Shiraef then asked for clarification "counting cards is a warrant for my arrest?"[65]

101. Nguyen responds, "it is illegal."[66]

---

[59] Id. at 23:46.
[60] Id. at 25:15.
[61] See <https://vimeo.com/637646048> ("Phone Video") Shiraef incorporates by reference the entirety of his video recording as evidence for his complaint.
[62] Most of the interaction prior to Shiraef activating his iPhone's video recording feature is captured by Officer Whitman's body cam.
[63] Phone Video at :02-:08.
[64] Id. at :09-:19. Nguyen uses the phrase "cheating or" but there is never any accusation against Shiraef of an *activity* other than counting cards. To be clear, Shiraef was never accused of any **activity** that would constitute cheating or fraudulent activity. The only activity of which Shiraef was accused as the basis of Nguyen's cheating or fraudulent activity accusation was the legal activity of card counting.
[65] Id. at :19-:22.
[66] Id. at :20-:22.

102.     Nguyen continues "it is a form of fraudulent activity in the state of Colorado. Fraudulent activity means you've done something to lead the casino to believe that you were not playing the games correctly."[67]

103.     As the Fox31 Denver Investigative report observes "actually that's not true, Colorado law states that a player may use their own unrecorded mental acuity while playing blackjack."[68]

104.     Shiraef asks "you're saying I could be arrested for counting cards?"[69]

105.     Nguyen replies, "you can, for fraudulent activity."[70]

106.     Shiraef then turns to the Whitman and states "in the state of Colorado, and you're a police officer and you witnessed that?"[71]

107.     Nguyen interjects "yep."[72]

108.     Whitman acknowledges "yeah I'm a police officer in the city of Blackhawk yes."[73]

109.     Shiraef continues "and they've been holding me here for no reason they haven't given me a reason why they're holding me here. For no reason they haven't

---

[67] Id. at :20-:32. (Under Nguyen's definition it would be considered a criminal offense not to play blackjack drunk, stupid, and losing).
[68] See <https://www.youtube.com/watch?v=yv-FJHHjNWU> at 1:09-1:18.
[69] Phone Video :32-:35.
[70] Id. at :34-:37.
[71] Id. at :37-:40.
[72] Id. at :40.
[73] Id. at :40-:43.

give me a reason why they're holding me here."[74]

110.     Nguyen then responds, "uh you gave us activity–you gave us reasons to believe that you were committing a crime in the state of Colorado."[75]

111.     Shiraef then asks, "the crime of card counting?"[76]

112.     Nguyen responds "the crime of fraudulent activity. Fraudulent activity is a crime in the state of Colorado. It's defined in multiple ways. This particular way it is defined is that **you were committing the crime of counting cards on a table**…"[77]

113.     Again, that's **not true**. "It is **undisputed** that **card-counting is not illegal**…" *Grosch v. Tunica Cnty.*, Miss., 2009 WL 161856, at *1 (N.D.Miss.,2009). Card counting is unanimously recognized as a legal activity (always) in the United States because "**card counting is not cheating or illegal**…" *Franceschi v. Harrah's Entm't, Inc.*, No. 2:10-cv-00205-RLH-RJJ, 2011 U.S. Dist. LEXIS 254, at *12 (D. Nev. Jan. 3, 2011) (emphasis added); *Donovan v. Grand Victoria Casino & Resort, L.P.*, 934 N.E.2d 1111, 1119 (Ind. 2010); *Lyons v. State*, 775 P.2d 219, 221 (Nev. 1989); *Hoagburg v. Harrah's Marina Hotel Casino*, 585 F. Supp. 1167, 1170 (D.N.J. 1984) ("**Card counting is not a crime**."); accord *Ziglin v. Players MH, L.P.*, 36 S.W.3d 786, 788, n.1 (Mo. Ct. App. 2001). A skilled blackjack player like Shiraef "uses **legal** techniques, such as **card counting**, to win at casino table games, especially blackjack… neither card counting

_____

[74] Id. at :42-:49.
[75] Id. at :49:-:53.
[76] Id. at :53-:55.
[77] Id. at :55-57 (emphasis added).

nor the use of a legal subterfuge such as a disguise to gain access to this table game is illegal…" *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1131, 1132 (C.A.9 (Nev.),2012). Further, in *Carey v. Nev. Gaming Control Bd.*, 279 F.3d 873, 876 (9th Cir. 2002) the Ninth Circuit again defined counting cards as a "**legal strategy**". See also *Bartolo v. Boardwalk Regency Hotel Casino, Inc.*, 449 A.2d 1339, 1342, 185 N.J.Super. 534, 538 (N.J.Super.L.,1982) ("…**card counting does not involve dishonesty or cheating**. On the contrary, a card counter is simply a highly skilled player who analyzes the statistical probabilities associated with blackjack and, based upon those probabilities, develops playing strategies which may afford him an advantage over the casino."). See e.g., *Mills v. PPE Casino Resorts Maryland, LLC*, 2017 WL 2930460, at *4-5 (D.Md., 2017) (entering summary judgment in favor of a card counter on his false imprisonment claim because the casino "did not have they did not have any legal justification for [detaining him]. The act which they accused Mills of committing— **card counting—is not illegal**… As [defendants] deprived Mills of his liberty and had no legal justification for doing so, they falsely imprisoned him.") Some states such as New Jersey and Missouri have even gone a step further and made advantage players such as card counters a protected class, with the effect that casinos are prohibited from telling card counters that they cannot play blackjack. See *Uston v. Resorts Int'l Hotel, Inc.*, 89 N.J. 163, 175, 445 A.2d 370, 376 (1982) (ruling that card counter "Uston will be free to employ his card-counting strategy at Resorts' blackjack tables… Resorts has no authority to exclude him for card counting.") There has also been ample

scholarship on the subject. Blackjack and the Law, I. Nelson Rose. & Robert A. Loeb (RGE Press 1998); Gambling and the Law, I. Nelson Rose, Chap. 15 (Gambling Times, Inc. 1986) (assumption); Advantage Play and Commercial Casinos, Anthony Cabot and Robert Hannum, (Miss. Law. Journal, vol. 74, p. 376 (2005); The Law for Gamblers, Chap. 2, p. 17, Robert A. Nersesian (Huntington Press, 2016); "Blackjack and the Law," Rose & Loeb (RGE Press, 1998), "Beyond Counting," James Grosjean (RGE Press 2000), "The Blackjack Zone," Elliot Jacobson (Blue Point Books 2005), and "The Law for Gamblers" Robert A. Nersesian (Huntington Press, 2016), accord *Ziglin v. Players MH, L.P.*, 36 S.W.3d 786, 788 (Mo. Ct. App. 2001). There is a determinative, broad, and unanimous consensus of authority set forth from every jurisdiction addressing the subject, and by every commentator on the subject, clearly establishing the Shiraef's conduct was legal, or alternatively, not cheating, dishonest, or "fraudulent activity." (Emphasis added in all quotes).

114. Shiraef tells Nguyen "and also you guys refused to cash me out. Did you hear about that?"[78]

115. Nguyen responds, "that I have nothing to–I don't know anything about that."[79]

116. Shiraef informs Nguyen "they wouldn't let me cash my chips out."[80]

117. Nguyen turns shocked to Jackson "you wouldn't let them–you wouldn't

---

[78] Id. at 1:23-1:27.
[79] Id. at 1:27-1:29.
[80] Id. at 1:28-1:30.

let him cash his chips out?"[81]

118.     Jackson responds mendaciously with the pretext that he refused to cash out Shiraef's chips "until I verified that he was of age. Because I didn't know that he was of age."[82]

119.     The video of the interaction finishes with Nguyen admitting that at bottom, Shiraef's detention was instigated because "the manager on duty has stated that he wanted that ID from you."[83] Thus bringing everything full circle back to the truth that the casino wanted Shiraef's ID, and did end up getting his ID by enlisting Nguyen's assistance to detain Shiraef for the legal and ethical activity of card-counting and enlisting Black Hawk Police to coerce his identification for the casino's private purpose of blacklisting Shiraef as an advantage player.

120.     Shiraef did not do anything wrong or illegal to justify being deprived of his liberty, seized, detained, threatened with criminal charges, and having the value of his chips stolen from him by the casino's refusal to cash them out.

121.     Nguyen and Whitman acted jointly with Ameristar in detaining Shiraef in the casino parking garage.

122.     Nguyen detained Shiraef at the request of Ameristar for the legal activity

---

[81] Id. at 1:32-1:34.
[82] Id. at 1:34-1:38. (Thus we hear for the first time throughout Shiraef's lengthy detention in the garage the false pretext for asking for Shiraef's ID and instigating his detention in the first place. To Jackson's dismay, Nguyen had been fed the true basis for the detention (card counting) by Hardman, instead of the pretext and had admitted that card counting was the basis of the detention on video.
[83] Id .at 1:55-1:59.

of counting cards.

123.     Nguyen and Whitman jointly agreed to physically confining Shiraef against his liberty for card counting, a legal activity.

124.     Defendants, Nguyen, Whitman and Ameristar engaged in conduct pursuant to a conspiracy agreement and shared a common goal to violate Shiraef's federal and state protected constitutional right to be free from unreasonable seizures.

125.     On the facts and evidence of this matter it is clear Ameristar and the individually named casino employees contacted the police and instigated them to detain Shiraef to force him to surrender his anonymity, and were joint instrumentalities of the police misconduct. Ultimately Ameristar and the defendant casino employees knew there did not exist reasonable suspicion to detain Shiraef and nonetheless called police to seize Shiraef.

<u>FACTUAL ALLEGATIONS IN THE ALTERNATIVE</u>

126.     Based on Nguyen's sworn interrogatory responses in related litigation, (Exhibit 1) in the alternative, AJ Hardman made the knowingly false declaration to Nguyen that Shiraef was committing the criminal offense of capping his wagers.

127.     It is thus also averred in the alternative, that Hardman fabricated the false allegation that Shiraef suspected of the criminal offense of wage capping, for the purpose (and result) of instigating Shiraef's false imprisonment by Nguyen.

128.     It remains to be flushed out by the truth-seeking function of discovery to confirm or expose as a lie, Nguyen's sworn declaration that he relied on Hardman's

false allegation that Shiraef was suspected of the crime of wage capping, as a basis for Nguyen's decision to detain Shiraef.

129.     As a result of Defendants tortious misconduct Shiraef has suffered and will continue to suffer loss of liberty, mental anguish, emotional distress, mortification outrage, hedonic injury, loss of sleep, embarrassment, non-economic compensatory damages and punitive damages.

**COUNT I**
**UNREASONABLE SEIZURE**
**42 U.S.C. § 1983 – 4th AMENDMENT**
**(Ameristar, Brian Donis, Rob Martinez, Dylan Jackson, AJ Hardman)**

130.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

131.     Ameristar and the individually named Defendants acted jointly with Gaming Agent Nguyen and Officer Whitman to unreasonably seize Shiraef and deprive Shiraef of his liberty.

132.     Hardman requested that Nguyen seize Shiraef and obtain his identification for the casino, as instructed to him by Jackson. Despite the fact that Hardman messed up and provided the true reason for detaining Shiraef (card counting) instead of the pretext that Jackson instructed him to provide to Nguyen, Nguyen still incredulously detained Shiraef.

133.     Jackson collaborated and coordinated closely with Nguyen in the manner of seizure by tracking Shiraef with surveillance cameras and directing Nguyen

on where to box in Shiraef on level 5 of the casino garage.

134.    Dylan Jackson likewise collaborated with Donis, Martinez, and AJ Hardman by keeping them appraised of the status of Nguyen arriving on the scene as well as Black Hawk Police and directing them on where to swarm Shiraef's car.

135.    Donis and Martinez worked directly with Nguyen and Whitman to unlawfully seize Shiraef identification through the use of Whitman's Official police power. Here, Whitman agreed to coerce Shiraef to hand his ID over to Nguyen at the behest of Nguyen and the individually named casino employees, and for the purpose of giving that identification to casino personnel.

136.    Martinez did in fact obtain Shiraef's ID, expunged through the coercive efforts of law enforcement, and electronically transmitted images of Shiraef's ID to Hardman. Thereafter the surveillance supervisor was able to quickly achieve Ameristar's objective of uploading Shiraef identification to the casino's database.

137.    The Individual Casino Employees and Agent Nguyen jointly planned to detain Plaintiff so that the Individual Casino Employees could obtain Shiraef's ID for the casino's private purposes.

138.    Shiraef had not committed any crime nor was engaged in illegal activity to warrant being seized.

139.    That law enforcement was acting solely for the casino's private purposes in their interactions with Shiraef is also established by the facts that the (1) Whitman directed Shiraef to give the ID to Nguyen for the purpose of providing it to Martinez,

rather than obtaining Shiraef's identification pursuant to a legitimate police investigatory purpose. Simply Officer Whitman was never concerned with ascertaining whether or not Shiraef was ever suspected of a crime, but rather in unconditionally assisting Nguyen and Ameristar in obtaining Shiraef's ID through means of false imprisonment. (2) Gaming Agent Nguyen, and Officers Whitman did not create any kind of police report about the Shiraef or the incident, thus also evincing the reality that they were never concerned with investigating an alleged crime.

140.    Shiraef Fourth Amendment right to be free from an investigatory detention absent reasonable suspicion was violated. In the alternative, Shiraef's detention transcended the allowable bound of a Terry stop and there were sufficient badges of formal arrest, requiring probable cause.

141.    The facts establish that Nguyen's focus was in getting Shiraef's identification over to casino personnel rather than obtaining it for any legitimate law enforcement purpose. For example, after Nguyen obtain Shiraef's identification he hands it over to Defendant Martinez to take photographs of with his iPhone for the casino's private purpose of placing Shiraef in databases as an advantage player.

142.    Whitman acted with a reckless disregard of Shiraef's constitutional right by assisting with his detention without having verified that Shiraef ever committed or suspected of committing any crime.

143.    By detaining Shiraef without any facts or evidence establishing probable cause or even reasonable suspicion, while acting for the private purposes of the

casino, Nguyen and Whitman were acting beyond the scope of their discretionary authority.

144.    By engaging in the acts, omission and misconduct described in the preceding paragraphs of this Complaint while acting under color of state law, the Defendants unlawfully detained Shiraef knowing the detention to without justification and without probable cause. Shiraef did not consent to the deprivation of his liberty.

145.    Defendants by means of physical force and show of authority restrained Shiraef of his liberty. As a result of an official show of authority by Whitman together with the Gaming Commission agent Joseph Nguyen, and Individual Casino Employees, Shiraef reasonably believed that he was not free to leave and in fact submitted to their assertion of authority.

146.    There was a governmental termination of Shiraef's freedom of movement through means intentionally applied.

147.    Defendants committed the aforementioned acts and omissions with actual malice, evil intent, the intent to deceive and defraud, with a reckless disregard for the constitutional rights of Shiraef, and for the purpose of injuring Shiraef such that it shocks the conscience.

148.    Ameristar, Jackson, Hardman, Donis, and Martinez all also acted with the intent to deceive and defraud by jointly agreeing to enlist law enforcement to detain Shiraef based on the knowingly false and fabricated pretext of age-verification when in fact the individually named defendants and Ameristar were never actually

concerned with Shiraef's age, as occurred in *Grosch*.[84]

149.     Nguyen and Whitman acted willingly to abuse their police authority to coerce Shiraef into surrendering his anonymity to Ameristar and the individually named casino employees.

150.     Shiraef was aware of and suffered loss of liberty as a result of Ameristar's decision to instigate his detention premised on a false pretext of age verification.

151.     Although Nguyen would later claim he believed card counting was illegal, he ended up acting only to provide Shiraef's identification to Martinez for the casino's private purpose and did not review the surveillance video as he claimed he would, nor perform any other type of legitimate investigation, nor did Nguyen even draft a police report.

152.     As alleged in the alternative based on Nguyen sworn declaration, and subject to the truth-seeking function of discovery: Hardman also instigated Shiraef's detention by providing Nguyen with the knowingly false allegation that Shiraef was suspected of committing the criminal offense of wage capping.

---

[84] In *Grosch*, the District Court reasoned that "[t]here was sufficient circumstantial evidence and ample credibility determinations that could have led a reasonable jury to conclude that Hollywood casino was not concerned about the plaintiff's age given they… allowed him to gamble and purchase chips earlier on the same day in question." *Grosch v. Tunica Cnty., Miss.*, 2009 WL 161856, at *6 (N.D.Miss.,2009). Just as in *Grosch*, Ameristar permitted Shiraef to purchase chips and play blackjack for hours, and only after assessing that Shiraef was counting cards, Ameristar and the individually named casino employees acted pursuant to their only true motive for seeking Shiraef's identification: to place Shiraef in databases as an advantage player.

153.     Shiraef is entitled to attorneys' fees pursuant to 42 U.S.C. § 1988(b) and experts' fees pursuant to § 1988(c).

**COUNT II**
**UNREASONABLE SEIZURE**
**C.R.S. § 13-21-131 – ARTICLE II, SECTION 7**
**(Joseph Nguyen)**

154.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows.

155.     This statute provides a private right of action against a "peace officer, as defined in section 24-31-901(3), who, under color of law, subjects or causes to be subjected, including failing to intervene, any other person to the deprivation of any individual rights that create binding obligations on government actors secured by the bill of rights, article II of the state constitution," and makes the peace officer "liable to the injured party for legal or equitable relief or any other appropriate relief." Colo. Rev. Stat. § 13-21-131 (emphasis added).

156.     Defendant Gaming Agent Joseph Nguyen is a "peace officer" under C.R.S. § 24-31-901(3) and therefore, subject to C.R.S. § 13-21-131.

157.     At all times pertinent to this complaint Nguyen was acting under color of Colorado state law in his capacity as a Colorado Division of Gaming agent and wore insignia identifying him as a police officer.

158.     Nguyen deprived Shiraef of his liberty and Shiraef's Constitutional right under Colo. Const. Art. II, Section 7 to be free from unreasonable seizures by

detaining him without reasonable articulable suspicion that Shiraef was engaged in criminal activity.

159.      Joseph Nguyen did not act upon a good faith and reasonable belief that his action was lawful and therefore, pursuant to Colo. Rev. Stat. § 13-21-131(4)(a) he is personally liable and shall not be indemnified by the State of Colorado for five percent of the judgment or settlement.

160.      Pursuant to Colo. Rev. Stat. § 13-21-131(2)(a) "Statutory immunities and statutory limitations on liability, damages, or attorney fees do not apply to claims brought pursuant to this section. The 'Colorado Governmental Immunity Act', article 10 of title 24, does not apply to claims brought pursuant to this section."

161.      Pursuant to Colo. Rev. Stat. § 13-21-131(2)(b) "Qualified immunity is not a defense to liability pursuant to this section."

162.      Pursuant to Colo. Rev. Stat. § 13-21-131(3), Plaintiff is entitled to attorneys' fees and costs.

163.      Pursuant to Colo. Rev. Stat. § 13-21-131(4), the State of Colorado is required to indemnify Joseph Nguyen for any judgment or settlement entered against him for this cause of action.

## COUNT III
## FAILURE TO INTERVENE
## C.R.S. § 13-21-131 – ARTICLE II, SECTION 7
### (Officer Whitman)

164.      Plaintiff incorporates by reference all preceding paragraphs as if fully set

forth herein and further alleges as follows.

165.     This statute provides a private right of action against a "peace officer, as defined in section 24-31-901(3), who, under color of law, subjects or causes to be subjected, including failing to intervene, any other person to the deprivation of any individual rights that create binding obligations on government actors secured by the bill of rights, article II of the state constitution," and makes the peace officer "liable to the injured party for legal or equitable relief or any other appropriate relief." Colo. Rev. Stat. § 13-21-131 (emphasis added).

166.     Defendant Officer Whitman is a "peace officer" under C.R.S. § 24-31-901(3) and therefore, subject to C.R.S. § 13-21-131.

167.     At all times pertinent to this complaint Officer Whitman was acting under color of Colorado state law in his capacity as a City of Black Hawk police officer.

168.     As set forth, from the moment Whitman arrived on the scene, Joseph Nguyen told her that Shiraef was being detained solely because he was a "reported card counter", and card counting is undisputedly a legal activity. Accordingly, Whitman knew that Nguyen was deliberately violating Shiraef's right under the Colorado Constitutional to be free from unreasonable seizures by detaining Shiraef but Whitman nonetheless failed to intervene to end Nguyen's wrongful deprivation of liberty of Shiraef, and even tacitly assisted with Nguyen's false imprisonment of Shiraef.

169.     Whitman heard Agent Nguyen repeatedly admitted that Shiraef was being detained for card counting which unquestionably a legal activity, yet she nonetheless refused to fulfill her legal obligation to intervene to end Nguyen's deprivation of liberty of Shiraef under C.R.S. § 13-21-131.

170.     Officer Whitman chose to disregard her legal obligation to intervene to end Nguyen and Whitman's deprivation of Shiraef's liberty in violation of Shiraef's rights under the Colorado constitution, despite ample opportunity to intervene over the span of the lengthy detention.

171.     Whitman appeared at the scene with a full show of official authority, identifying herself as a Black Hawk police officer while wearing official police uniform, her badge, and service gun. Whitman used her official authority to assist Nguyen in falsely imprisoning Shiraef. Whitman told Shiraef he could not leave and voiced her approval of the gaming commission officer depriving Shiraef of his liberty.

172.     Officer Whitman did not act upon a good faith and reasonable belief that his action was lawful and therefore, pursuant to Colo. Rev. Stat. § 13-21-131(4)(a) she is personally liable and shall not be indemnified by the State of Colorado for five percent of the judgment or settlement.

173.     If Officer Whitman's five percent portion of the judgment or settlement is uncollectible from her, then the City of Black Hawk shall satisfy the full amount of the judgment or settlement against her pursuant to Colo. Rev. Stat. § 13-21-131(4)(a).

174.     Pursuant to Colo. Rev. Stat. § 13-21-131(2)(a) "Statutory immunities and

statutory limitations on liability, damages, or attorney fees do not apply to claims brought pursuant to this section. The 'Colorado Governmental Immunity Act', article 10 of title 24, does not apply to claims brought pursuant to this section."

175.     Pursuant to Colo. Rev. Stat. § 13-21-131(2)(b) "Qualified immunity is not a defense to liability pursuant to this section."

176.     Pursuant to Colo. Rev. Stat. § 13-21-131(3), Plaintiff is entitled to attorneys' fees and costs.

177.     Pursuant to Colo. Rev. Stat. § 13-21-131(4), the City of Black Hawk is required to indemnify Officer Whitman for any judgment or settlement entered against her for this cause of action.

## COUNT IV
## FALSE IMPRISONMENT
### (Ameristar, Brian Donis, Rob Martinez, Dylan Jackson, AJ Hardman)

178.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows.

179.     Ameristar and the individually named casino employees restricted Shiraef's freedom of movement by directing law enforcement to detain Shiraef.

180.     Jackson directed Hardman to request to the Colorado Division of Gaming to detain Shiraef to obtain his identification for Ameristar casino, so that the casino to enter Shiraef's private information into casino databases as an advantage player.

181.     Hardman unwittingly conveyed the casino's true motive in seeking

Shiraef's ID to Nguyen, that the casino had assessed Shiraef was counting cards. Nonetheless, Nguyen proceeded to detain Shiraef at Ameristar and the individually named casino employees' behest and admitted to the same on video.

182.     As alleged in the alternative based on Nguyen sworn declaration, Hardman also instigated Shiraef's detention by making the knowingly false statement to Nguyen that Shiraef was suspected of the criminal offense of capping his wagers. (See Exhibit 1).

183.     When Nguyen was unsuccessful in coercing Shiraef to surrender his anonymity to the casino, he asked Whitman to assist in the same and admitted to Whitman that Shiraef's legal activity of card counting was the sole basis of seeking Shiraef's identification to give to the casino.

184.     Officer Whitman agreed and coerced Shiraef into handing his ID to Nguyen, knowing that Nguyen would then hand over the ID to Martinez as occurs on video.

185.     Martinez and Donis then obtain Shiraef's identification knowing it was seized pursuant to unlawful joint state action between Ameristar and co-opting of Nguyen and Whitman's official police power and authority.

186.     Ameristar restricted Shiraef's freedom of movement by instigating Shiraef's detention by law enforcement.

187.     Ameristar came up with the knowingly false pretext of age-verification to fraudulently induce law enforcement to detain Shiraef for the casino's private purpose

of identifying Shiraef as a card counter. Although ultimately Ameristar's surveillance supervisor Hardman was candid with Nguyen and informed him of the true reason for seeking Shiraef's identification: that he was determined to be a card counter.

188.     As pled in the alternative based on Nguyen sworn declaration, Ameristar instigated Shiraef's detention by knowingly making the false representation to Nguyen that Shiraef was suspected of the criminal offense of wage capping thus inducing Nguyen to detain Shiraef based on fraudulent pretense.

189.     Shiraef's freedom of movement was restricted for a period of time directly or indirectly by Ameristar's decision to direct Nguyen to detain Shiraef.

190.     Shiraef was aware that his freedom of movement was restricted once Nguyen physically blocked his egress with a black SUV.

## COUNT V
## CONVERSION
### (Ameristar)

191.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows.

192.     Ameristar breached this duty of care by refusing to cash out Shiraef's $1,800 in chips unless Shiraef gave them his ID, for the purposes of placing Shiraef in Ameristar's casino database as a card counter.

193.     Ameristar unlawfully undertook a distinct, unauthorized act of dominion and ownership over Shiraef's money by refusing to cash in his chips, to unlawfully enrich themselves at Shiraef's detriment and immediately ascertainable pecuniary loss.

## RELIEF SOUGHT

194.     Wherefore Plaintiff demands a jury trial on all counts, and upon a verdict in his favor, asks that economic and compensatory damages of $1,500,000 be assessed against all Defendants, jointly and severally; as well as punitive damages of $1,500,000 be assessed against all Defendants jointly and severally, for those claims for which they are available by law, and that Plaintiff be awarded costs, attorneys' fees, and all other relief to which he is entitled under state and federal law. Plaintiff also seeks leave of Court to freely amend this complaint in due course and to add co-Defendants upon proper cause and justification.

Respectfully submitted,

/s/ Harris S. Ammerman
Harris S. Ammerman
1115 Massachusetts Ave NW
Washington, DC 20005
(301) 655-0606
*Counsel for Joseph Shiraef*

# EXHIBIT 1

# EXHIBIT 1

engaged in Fraudulent Acts. Due to Mr. Nguyen's training and experience, it is not uncommon for patrons at a casino to refuse to provide identification and to attempt to leave the scene when they are suspected of engaged in Fraudulent Acts. According to Mr. Hardman, Mr. Shiraef was also suspected of one or more Fraudulent Acts as that term is defined under Colorado law. This information was conveyed to Mr. Nguyen. Ameristar told Mr. Nguyen they suspected Mr. Shiraef was capping his main wager and counting cards. Upon making contact with Mr. Shiraef, Mr. Nguyen asked to see his identification so that he could verify whether he was of age. Despite Mr. Nguyen's clearly marked jacket that read "police," and despite showing Mr. Shiraef his police credentials, Mr. Shiraef responded that he did not look like a police officer. This also raised suspicions in Mr. Nguyen's mind because it is unusual for subjects to question whether an officer is really a police officer after being shown police credentials. Mr. Nguyen waited for the Black Hawk officers to arrive. Once the Black Hawk officers arrived, Mr. Shiraef begrudgingly provided Mr. Nguyen with his Tennessee driver's license. Mr. Nguyen cleared Mr. Shiraef through the Gilpin County dispatch and was advised that Mr. Shiraef had a non-extraditable warrant for assault out of Wisconsin. Mr. Nguyen reviewed the video surveillance and did not see any instances of Fraudulent Acts. Mr. Nguyen then returned and released Mr. Shiraef. The entire investigative detention by Mr. Nguyen lasted roughly 11 minutes. All of these facts coupled with Mr. Shiraef's avoidant behavior and his demeanor while speaking with Mr. Nguyen contributed to Mr. Nguyen's reasonable suspicion. Upon confirming that there were not Fraudulent Acts shown on the surveillance video, Mr. Nguyen immediately terminated the investigative detention.

This response may be supplemented by documents and deposition testimony.

**AS TO RESPONSES TO INTERROGATORIES**

I, Joseph Nguyen, declare under penalty of perjury that the foregoing responses as true and correct to the best of my knowledge and information.

_____
Joseph Nguyen

Dated: November 19____, 2023